28 P.3d 10 (2001)
107 Wash.App. 129
STATE of Washington, Respondent,
v.
Christian Marie RAINEY, Appellant.
In the Matter of the Application for Relief from Personal Restraint of Christian M. Rainey, Petitioner.
Nos. 19168-1-III, 19564-3-III.
Court of Appeals of Washington, Division 3, Panel Nine.
July 5, 2001.
*12 Robert E. Schiffner, Moses Lake, for Appellant.
John D. Knodell, III, Prosecuting Attorney, Ephrata, for Respondent.

*11 OPINION PUBLISHED IN PART
SWEENEY, J.
This is a difficult case for the court. It is difficult not because the issues Christian Rainey wants us to consider are novel or intricate. In fact, they are garden-variety questions typically raised in many criminal cases. Should evidence have been suppressed because the stop here was pretextual (State v. Ladson, 138 Wash.2d 343, 979 P.2d 833 (1999))? And should Ms. Rainey have been allowed to tell the jury her story? She did not testify. The difficulty here is the procedural hurdles in front of these issues.
Ms. Rainey's primary complaint is that she was incompetently represented throughout the course of her trial. She cannot, by way of her direct appeal, raise that question because the lawyer (the one who she claims incompetently represented her) left no record upon which we could pass upon the adequacy of his representation and, necessarily, the question she wants to pose. And for that reason she filed a personal restraint petition. Unfortunately for her, she is no longer under restraint and arguably then not entitled to relief from restraint. RAP 16.4(b).
Nonetheless, for reasons we will outline, we believe, and by that I mean every member of this panel believes, that Ms. Rainey was not competently represented. And we conclude that the issues she wants us to consider are likely to recur. We therefore choose to address them. In re Personal Restraint Petition of Myers, 105 Wash.2d 257, 261, 714 P.2d 303 (1986); State v. Mott, 49 Wash.App. 115, 117, 742 P.2d 158 (1987).
We reverse Ms. Rainey's conviction and remand for a new trial. The trial court is also directed to appoint Moses Lake attorney, Robert E. Schiffner, her appellate counsel, to represent her in further proceedings in this matter.
We turn now to the facts giving rise to this dispute.

FACTS
Ms. Rainey and James Evinger are friends. Mr. Evinger invited Ms. Rainey to drive from their homes in the Tacoma area to the Columbia Gorge for a rock concert. Police stopped Mr. Evinger's Jeep, ostensibly because he did not have a front license plate. According to Ms. Rainey, numerous other cars were stopped; some were seized, some were released. According to her, "dozens of other vehicles, if not hundreds" were being searched at this stop. Personal Restraint Petition (PRP) at 4. Trooper David Bolton approached the Jeep and said he smelled marijuana. Mr. Evinger denied there was marijuana in the car.
The trooper ordered both Ms. Rainey and Mr. Evinger to get out of the Jeep. Both complied. The trooper and Mr. Evinger then went back and forth with accusations and denials. The trooper told Mr. Evinger there was marijuana in the Jeep; Mr. Evinger said there was not. Ms. Rainey, after listening to the exchange for some time, blurted out, "I'll show you where it's at." Report of Proceedings (RP) at 27. She then walked to the passenger side of the Jeep, *13 opened the glove box, retrieved a baggie of marijuana, and shut the glove box. The trooper saw another baggie in the glove box. He opened the glove box and found a baggie of psilocybin mushrooms.
Ms. Rainey, in her personal restraint petition, claimed she had only learned of the presence of the marijuana when she retrieved a cigarette lighter from the glove compartment during the trip from western Washington. According to her, she immediately expressed her anger, but by that time they were already in eastern Washington. And she was stuck.
Trooper Bolton searched the Jeep. He found marijuana pipes. Mr. Evinger claimed all the drugs belonged to Ms. Rainey. But he later pleaded guilty to possession of marijuana in exchange for dismissal of the possession of psilocybin mushrooms charge. During his sentencing, and at Ms. Rainey's trial, he testified that the drugs were his.
Ms. Rainey was charged with possession of marijuana, possession of psilocybin mushrooms, and possession of drug paraphernalia. She did not testify, although in her personal restraint petition she says she wanted to. The jury found Ms. Rainey guilty of possession of marijuana and psilocybin mushrooms.

PERSONAL RESTRAINT PETITION
To obtain relief through a personal restraint petition, the petitioner must be subject to "an unlawful `restraint,' which includes any `disability resulting from a judgment or sentence in a criminal case.'" In re Personal Restraint Petition of Meyer, 142 Wash.2d 608, 615, 16 P.3d 563 (2001) (quoting RAP 16.4(b)). Here, Ms. Rainey is no longer subject to any disability resulting from her sentence. Her personal restraint petition is then moot.
The general rule is that we will not address a moot issue unless it involves "matters of continuing and substantial public interest." Myers, 105 Wash.2d at 261, 714 P.2d 303; see Mott, 49 Wash.App. at 117, 742 P.2d 158. We consider three factors to determine whether public interest exists: "(1) the public or private nature of the question presented, (2) the need for a judicial determination for future guidance of public officers, and (3) the likelihood of future recurrences of the issue." Myers, 105 Wash.2d at 261, 714 P.2d 303.
Here, Ms. Rainey's personal restraint petition satisfies those factors which we must consider in deciding whether the questions raised are of "continuing and substantial public interest." First, the allegations and facts, if she is correct, would suggest that the law enforcement officers in this case were conducting wholesale pretextual searches in violation of Ladson. That is of public concern (factor 1). Id.
On the second and third factors, according to the prosecutor's representation during oral argument, the procedures used by the law enforcement officers here will be employed in future concerts in the Gorge area, and in fact were going to be used on the very weekend following oral argument on this case (May 12 and 13, 2001). So there is both a need for future guidance (factor 2) and a likelihood of recurrence of this same question (factor 3). Id. Accordingly, although Ms. Rainey's personal restraint petition is technically moot, we choose to address the issues raised.

INEFFECTIVE ASSISTANCE OF COUNSEL
Ms. Rainey claims that she received ineffective assistance of counsel because her attorney did not move to suppress her statement to Trooper Bolton and her subsequent production of the marijuana.
We review a challenge to effective assistance of counsel de novo. State v. White, 80 Wash.App. 406, 410, 907 P.2d 310 (1995). To establish a claim of ineffective assistance of counsel, the defendant must show: (1) that counsel's performance was deficient, i.e., it fell below an objective standard of reasonableness based on consideration of all the circumstances based on the record established below; and (2) the deficient performance prejudiced the defendant, i.e., there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 *14 (1984); State v. McFarland, 127 Wash.2d 322, 334-35, 899 P.2d 1251 (1995).
The defendant bears the burden of showing there were no "legitimate strategic or tactical reasons" behind defense counsel's decision. McFarland, 127 Wash.2d at 336, 899 P.2d 1251. Ms. Rainey argues there were no strategic or tactical reasons for not bringing a motion to suppress. The State does not suggest any legitimate reasons. And we can conceive of no reason why such a motion would not have been made. Ms. Rainey's representation was then deficient. See State v. Klinger, 96 Wash.App. 619, 623, 980 P.2d 282 (1999) (defense counsel was deficient in not moving for suppression when there was "no reasonable basis or strategic reason" for failure to move for suppression).
Ms. Rainey's allegations contained in her personal restraint petition, if true, would likely require suppression of the evidence against her. Thus, there is a reasonable probability that a motion to suppress based on a pretextual stop would have been granted. Ms. Rainey therefore satisfies the second prong of the Strickland test. McFarland, 127 Wash.2d at 335, 899 P.2d 1251.

RIGHT TO TESTIFY
Ms. Rainey contends, in her personal restraint petition, that she wanted to testify, but her attorney would not let her. A defendant, of course, has a fundamental right to testify on her own behalf. Rock v. Arkansas, 483 U.S. 44, 52, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987); State v. Thomas, 128 Wash.2d 553, 558, 910 P.2d 475 (1996). Only the defendant has the authority to decide whether or not to testify.[1]Thomas, 128 Wash.2d at 558, 910 P.2d 475. A defendant may waive the right to testify. Id. The waiver must be made knowingly, voluntarily, and intelligently. Id.
Ms. Rainey's factual defense is that the drugs were not hers; they were Mr. Evinger's. Despite this, and despite the absence of any criminal record that might create problems if she took the stand, she was not asked to tell the jury her story. The right to testify is the defendant's exclusively. Id. Here, we can conceive of no tactical or strategic reason for not allowing her to testify. And there is none set out in either the personal restraint petition, the State's response to the personal restraint petition, or the appellate record.
We will discuss Ms. Rainey's other assignments of error for the benefit of the trial court on remand.

PRETEXTUAL STOP
A pretextual traffic stop violates article I, section 7, because it is a warrantless seizure. State v. Ladson, 138 Wash.2d 343, 979 P.2d 833 (1999). There is a fundamental difference between detaining a citizen to search for evidence of crimes and a stop to enforce the traffic code. Id. at 358 n. 10, 979 P.2d 833. "The essence of a pretextual traffic stop is that the police stop a citizen, not to enforce the traffic code, but to investigate suspicions unrelated to driving." State v. DeSantiago, 97 Wash.App. 446, 451, 983 P.2d 1173 (1999) (citing Ladson, 138 Wash.2d at 351, 979 P.2d 833).
"When determining whether a given stop is pretextual, the court should consider the totality of the circumstances, including both the subjective intent of the officer as well as the objective reasonableness of the officer's behavior." Ladson, 138 Wash.2d at 358-59, 979 P.2d 833. If the court concludes that the search or seizure was unconstitutional, evidence resulting from the search or seizure must be suppressed. Id. at 359, 979 P.2d 833.
Here, according to Ms. Rainey, there were more than a dozen Washington State patrol officers and sheriff's deputies who were stopping cars on their way to the concert. One of the officers directing traffic was a drug recognition expert. And no traffic infraction was ever issued to Mr. Evinger.
*15 We do not pass upon her allegations, but merely conclude that if her allegations are correct, at least a motion should have been made to permit the trial judge to pass upon the propriety of these searches and the legal consequences which would flow if the search was pretextual by Ladson's reasoning. Ladson, 138 Wash.2d at 353, 979 P.2d 833.

EMPHASIS PATROLS
The State, during oral argument, argued vigorously that law enforcement must be given the tool of "emphasis patrols" in order to protect the public. It is correct.
But the problem is not with emphasis patrols per se. Some are perfectly legal constitutionally compatible. For example, recently in Spokane the police and state patrol troopers set up emphasis patrols at various crosswalks around the city of Spokane to crack down on drivers who disregard crosswalks. Likewise, emphasis patrols are frequently used at locations where drivers are inclined to exceed the legal speed limit on a regular basis or drive under the influence of drugs or alcohol. See State v. Cole, 73 Wash. App. 844, 845, 871 P.2d 656 (1994) (police conducted a "`DWI emphasis patrol' on the highway between Colfax and Pullman"). And certainly sting operations calculated to apprehend both distributors and users of illegal drugs by the use of confidential informants or drug enforcement officers operating undercover are appropriate. State v. Pleasant, 38 Wash.App. 78, 79, 82-84, 684 P.2d 761 (1984) (police set up a sting operation to catch drug dealers; court rejected defendant's argument that sting operation violated his right to due process); see State v. Duran-Davila, 77 Wash.App. 701, 702, 892 P.2d 1125 (1995) (police "conducted a sting operation" at a motel); State v. McClam, 69 Wash. App. 885, 886, 850 P.2d 1377 (1993) (police conducted a "`drug sting' operation" on a city block in Seattle); State v. Alonzo, 45 Wash.App. 256, 258, 723 P.2d 1211 (1986) (police used a "special emphasis patrol" in the Pike Place Market area in response to complaints of drug dealing by area merchants and citizens).
The problem Ms. Rainey complains about here is that the emphasis patrol focused on narcotics, but the stop was for a traffic infraction. Thus, the initial contact, in Mr. Evinger's case for not having a front license plate, was, she argues, pretextual. And it is precisely this kind of police conduct that the majority of our state Supreme Court condemned in Ladson. "The essence of a pretextual traffic stop is that the police stop a citizen, not to enforce the traffic code, but to investigate suspicions unrelated to driving." DeSantiago, 97 Wash.App. at 451, 983 P.2d 1173 (citing Ladson, 138 Wash.2d at 351, 979 P.2d 833).

PRODUCTION OF EVIDENCE WITHOUT MIRANDA WARNINGS
Ms. Rainey also contends that a motion to suppress her retrieval of the marijuana would have been granted because it was a testimonial act in response to Trooper Bolton's questions before she was given her Miranda[2] warnings.
The production of evidence can be testimonial in nature. State v. Wethered, 110 Wash.2d 466, 471, 755 P.2d 797 (1988); State v. Moreno, 21 Wash.App. 430, 433, 585 P.2d 481 (1978); State v. Dennis, 16 Wash.App. 417, 423, 558 P.2d 297 (1976). Miranda warnings are required when police ask questions "designed to elicit incriminating statements." Moreno, 21 Wash.App. at 434, 585 P.2d 481. Thus, the testimonial production of evidence "should be suppressed if done while in custody in the absence of Miranda warnings." Wethered, 110 Wash.2d at 471, 755 P.2d 797.
Here, Ms. Rainey argues that her retrieval of the marijuana was a result of Trooper Bolton seizing and questioning Mr. Evinger and her. Even assuming that Ms. Rainey was in custody,[3] she was not the focus of Trooper Bolton's questions. Trooper Bolton *16 testified that Ms. Rainey produced the marijuana after he asked Mr. Evinger where the drugs were located. Ms. Rainey's account, through her personal restraint petition, is the same:
Trooper Bolton returned as promised and asserted once more he "knew" that there was marijuana in the vehicle. Much to my surprise, James [Evinger] denied it again. The two men resumed their juvenile game of accusation and denial.
After five more rounds of the "did not/did so," I purposefully strode to the Jeep in absolute disgust, opened the glove compartment, grabbed the baggie and tossed it at Trooper Bolton who had turned toward me to monitor my actions.
PRP at 5.
According to Ms. Rainey's own account, her actions were not the result of questioning by Trooper Bolton. Ms. Rainey spontaneously and voluntarily turned over the drugs; she did not do so from the result of interrogation. And a voluntary statement, or here a testimonial act, is admissible. See State v. Ortiz, 104 Wash.2d 479, 484, 706 P.2d 1069 (1985) (unsolicited admission is admissible); State v. Miner, 22 Wash.App. 480, 483, 591 P.2d 812 (1979) (statement is voluntary when made spontaneously, not solicited, and not the result of custodial interrogation). Accordingly, there was no basis to suppress the evidence based on the absence of Miranda warnings.

CONCLUSION
It goes without saying, but we will say it anyway, we do not fault the trial judge, who is charged only with passing upon the questions that the parties present. Nor do we fault the prosecutor who aggressively and competently represented the interest of the State. Nonetheless, we are convinced that Ms. Rainey received ineffective representation. And there is at least a reasonable probability that those shortcomings affected the result here.
We therefore reverse Ms. Rainey's conviction, grant her personal restraint petition in part, and remand for a new trial. We further instruct the trial court to appoint Robert E. Schiffner as her attorney.
The remainder of this opinion has no precedential value. Therefore, it will be filed for public record in accordance with the rules governing unpublished opinions. RCW 2.06.040.
WE CONCUR: KURTZ, C.J. and KATO, J.
NOTES
[1] "`General agreement exists that the decisions as to guilty plea, jury trial, appeal, defendant's presence at trial, and the defendant testifying are for the defendant, and that decisions on a substantially larger group of matters, such as objecting to inadmissible evidence, are for counsel.'" In re Personal Restraint of Stenson, 142 Wash.2d 710, 735, 16 P.3d 1 (2001) (quoting 3 WAYNE R. LAFAVE, JEROLD H. ISRAEL & NANCY J. KING, CRIMINAL PROCEDURE § 11.6(a), at 603 (2d ed.1999)).
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966).
[3] A person is seized when, by means of a show of force or authority, his or her freedom of movement is restrained. State v. Mendez, 137 Wash.2d 208, 222, 970 P.2d 722 (1999). The test is whether a reasonable person, under the circumstances, would have believed he or she was not free to leave. Id.